# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

OMG FIDELITY, INC.,

                Plaintiff,

        v.

SIRIUS TECHNOLOGIES, INC.,

                Defendant.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: 6:06CV1184

DNH DEP

TO: (Name and address of defendant)
    SIRIUS TECHNOLOGIES, INC.
    132 Clear Road
    Oriskany, New York 13424

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Jonathan B. Fellows, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY 13202

an answer to the complaint which is herewith served upon you, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

LAWRENCE K. BAERMAN

CLERK

(BY) DEPUTY CLERK

DATE 10/4/06

1231326.1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

OMG FIDELITY, INC.,

                        Plaintiff,

            v.

SIRIUS TECHNOLOGIES, INC.,

                        Defendant.

---

**COMPLAINT AND DEMAND FOR JURY**

Civil Action No. 6: 06CV1184

DNH DCP

FILED OCT 04 2006 — Lawrence K. Baerman, Clerk - Syracuse

     OMG Fidelity, Inc., by its undersigned attorneys, for its complaint against Defendant, alleges as follows:

### NATURE OF THE ACTION

    1.    This is an action to cease Defendant's trade secret misappropriation, conversion, unfair competition and tortious interference with a contract.

### PARTIES, JURISDICTION AND VENUE

    2.    Plaintiff, OMG Fidelity, Inc., at all relevant times, was and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 400 Corporate Court, Suite A, South Plainfield, New Jersey, 07080 ("OMG").

    3.    Defendant Sirius Technologies, Inc., at all relevant times, was and is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 132 Clear Road, Oriskany, New York 13424 ("Sirius").

4. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because it is between citizens of different states and, as set forth more fully below, the amount in controversy exceeds $75,000.00 exclusive of costs and interest.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c) because a substantial part of the acts and omissions giving rise to OMG's claims are occurring in this judicial district.

## FACTS COMMON TO ALL COUNTS

6. OMG is a leading producer of electroless nickel applications, including electroless nickel applications for use with memory disks.

7. OMG owns proprietary technology, formulae and processes which enable it to provide a unique vertical integration from base metals and concentrates to finished metal products. OMG owns proprietary technology, formulae and processes related to electroless nickel applications for use with memory disks (the "Technology"). The Technology is the result of substantial time, investment and effort on behalf of OMG and its predecessors. OMG's rights in and to the Technology provide it with a unique, valuable and distinctive advantage because the Technology is not publicly available and is not generally known.

8. OMG and its predecessors have taken reasonable steps to insure that the Technology remains confidential.

**Ruffini's Obligations To OMG**

9. OMG's presence in electroless nickel applications dates back to 1998 when OMG acquired Auric Corporation ("Auric") and Fidelity Chemical Products (Malaysia) SDN.BHD ("Fidelity Chemical"). When OMG acquired Auric and Fidelity Chemical, Alan Ruffini ("Ruffini") was an employee of Auric who was responsible for research involving electroless

nickel applications. Ruffini became employed by OMG after OMG acquired Auric and Fidelity Chemical.

10. While employed by Auric, and then by OMG, Ruffini's responsibilities included the development, production and sale of certain electroless nickel applications for memory disk products.

11. In connection with his employment with Auric, because he would have access to confidential and proprietary information of Auric, Ruffini executed an Employment Agreement on May 24, 1989 ("the Employment Agreement").

12. Pursuant to the terms of the Employment Agreement, Ruffini acknowledged that he would have access to confidential and proprietary information owned by Auric that would remain the property of Auric. Accordingly, Ruffini promised that he would not:

> at any time, for so long as any Confidential Information shall remain confidential or otherwise remain wholly or partially protectable, either during the course of Employee's employment or thereafter, use or disclose, directly or indirectly to any person outside of the Company or any Affiliate any such Confidential Information; and

13. Ruffini also promised that he would

> return promptly upon the termination of Employee's employment for any reason (or in the event of Employee's death, his personal representative shall return) to the Company at its direction and expense any and all copies (either prepared by the Company or Employee) of the records, drawings, materials, memoranda and other data constituting or pertaining to Confidential Information.

14. "Confidential Information," as used in the Employment Agreement, includes:

> all business information of any nature and in any form which at the time or times concerned is not generally known to those persons engaged in business similar to that conducted or contemplated by the Company (other than by the act or acts of an employee not authorized by the Company to disclose such information) and which relates to any one or more of the aspects of the present or past business of the

>Company or any Affiliate or any of their respective predecessors including patents and patent applications; inventions and improvements, whether patentable or not; development projects; policies, processes, formulas, techniques, know how; and other facts relating to sales, advertising, promotions, financial matters, customers, customers' lists, customers, purchases or requirements and other trade secrets.

15. By the terms of the Employment Agreement, and in connection with OMG's acquisition of Auric, OMG succeeded to all rights provided by the Employment Agreement.

16. By the terms of the Employment Agreement, Ruffini's obligations set forth in Paragraph 12 above continued after his employment ceased.

17. After executing the Employment Agreement, Ruffini executed a Non-Disclosure Agreement in 1992 (the "Non-Disclosure Agreement").

18. Pursuant to the terms of the Non-Disclosure Agreement, Ruffini agreed not to use or disclose certain proprietary, confidential or other trade secret information owned by Auric. Ruffini's obligations pursuant to the Non-Disclosure Agreement applied during his employment and after his employment ceased.

19. Pursuant to the terms of the Non-Disclosure Agreement, Ruffini acknowledged and agreed that OMG would not have an adequate remedy at law if he breached his non-disclosure obligations.

20. In connection with OMG's acquisition of Auric, OMG succeeded to all rights pursuant to the Non-Disclosure Agreement.

21. While employed by Auric, and then by OMG, Ruffini had access to and used the Technology and, in fact, as a part of his responsibilities for OMG and its predecessors, assisted in the research, development, testing and modification of the Technology.

**Komag, Inc.**

22. Komag, Inc. is a corporation headquartered in California located at 1710 Automation Parkway, San Jose, California 95131 ("Komag"). Komag is a leading supplier of "thin-film" disks used for digital data storage on personal computers, personal stereo equipment, digital video recorders, game boxes and other consumer electronic storage systems.

23. Since at least as early as 1995, Komag has purchased electroless nickel plating applications for its "thin-film" memory disks from OMG and its predecessors. Since at least as early as 1995, in order to provide Komag with electroless nickel plating for its thin-film memory disks, OMG has used its Technology.

24. In 2004, OMG and Komag entered into a Volume Purchase Agreement (the "Agreement") which provides that Komag purchase nickel plating solution for thin-film memory disks from OMG. While the particular terms of the Agreement are confidential, the Agreement is worth tens of millions of dollars and OMG has a reasonable expectation that its relationship with Komag will last for years in the future.

25. Because OMG would be sharing confidential and proprietary information with Komag, OMG and Komag have certain nondisclosure obligations which are embodied in the Volume Purchase Agreement and in a nondisclosure agreement executed by Komag and OMG in November, 2002.

26. Ruffini was involved with OMG's efforts to supply electroless nickel applications for Komag's thin-film memory disks from at least as early as 1991 until April, 2001. Indeed, as a part of his responsibilities for OMG, he had access to and used the Technology. Ruffini worked with Komag on behalf of OMG to modify OMG's formulae for electroless nickel applications in order to meet the changing demands of Komag for their thin-film memory disk products. The adjustments to OMG's Technology, the processes involved in producing

electroless nickel applications to meet specified performance criteria for Komag is, and at all relevant times has been, proprietary to OMG (the "Know How").

27. OMG's proprietary Know How is the result of a substantial investment of time and resources and provides OMG with a distinct commercial advantage because it is not generally known.

28. OMG and its predecessors have taken reasonable steps to insure that the Know How remains confidential.

29. Since at least as early as 1991, in connection with his responsibilities for OMG and its predecessors, Ruffini had access to and used the Know How.

**Ruffini and Sirius**

30. Ruffini resigned from OMG in 2001.

31. After resigning from OMG, Ruffini acquired an ownership interest in Sirius.

32. Ruffini is employed by Sirius and serves as its Chief Executive Officer.

33. Sirius develops, manufactures, distributes and services specialty products in the metal finishing industry, including electroless nickel.

34. After OMG learned that Ruffini would be working for Sirius and working on memory disk technology, OMG sent Ruffini a letter reminding him of his nondisclosure obligations to OMG.

35. Several months after reminding Ruffini of his nondisclosure obligations to OMG, OMG learned that Ruffini had been in contact with OMG's customers, including, at least, Komag, offering to provide OMG's customers with a competitive electroless nickel application and OMG's manufacturing Know How. In an abundance of caution, OMG wrote to Ruffini reminding him of his nondisclosure obligations.

36. After OMG wrote to Ruffini for the second time, OMG received a letter from Komag. Komag assured OMG that Ruffini was not appropriating the Technology or the Know How. OMG relied on the representations from Komag that Ruffini and Sirius were not using the Technology or the Know How.

37. In approximately September, 2006, OMG learned that Komag had installed tanks and other materials in its plant in Malaysia which would enable Komag to blend and produce its own electroless nickel applications for thin-film memory disks.

38. In approximately September, 2006, OMG learned that Komag had contracted with a third party for that third party to provide Komag with a formula for electroless nickel applications for memory disks, technical support and manufacturing know how.

39. In approximately September, 2006, OMG learned that Ruffini, through Sirius, had agreed to sell to Komag a formula for electroless nickel applications for memory disks, agreed to provide technical support and agreed to provide manufacturing know how.

40. Upon information and belief, the formula for electroless nickel application Ruffini and Sirius agreed to sell to Komag is identical or substantially similar to the formulae for electroless nickel applications OMG had been providing to Komag while Ruffini was employed by OMG.

41. Upon information and belief, the technical support and manufacturing know how for electroless nickel applications Ruffini and Sirius agreed to provide to Komag incorporates the Know How and is identical or substantially similar to the support and manufacturing know how OMG had been providing to Komag while Ruffini was employed by OMG.

42.     In order to: (a) provide Komag with a formula for an electroless nickel application for memory disks; (b) offer technical support, and (c) provide manufacturing know how, Ruffini and Sirius incorporated and used the Technology and the Know How.

43.     Upon information and belief, Ruffini and Sirius have recently tested an electroless nickel application for memory disks that they have agreed to sell Komag in New York at the Sirius facility in Oriskany, have recently tested manufacturing equipment in New York at the Sirius facility located in New York and have recently trained employees of Komag how to use the equipment at the Sirius facility in New York.

44.     Upon information and belief, Komag, with the assistance of Ruffini and Sirius, plans to produce its own electroless nickel applications for memory disks in the fourth quarter of 2006.

## COUNT I
## TORTIOUS INTERFERENCE WITH A CONTRACT

45.     OMG incorporates each and every allegation of Paragraphs 1-44 of the Complaint as though fully set forth herein.

46.     The Employment Agreement is a valid enforceable agreement.

47.     Sirius has actual knowledge of the Employment Agreement.

48.     OMG and its predecessors have performed all of their obligations under the Employment Agreement.

49.     At Sirius' direction and with Sirius' knowledge, Ruffini has breached the Employment Agreement by using and disclosing OMG's Confidential Information.

50.     At Sirius' direction and with Sirius' knowledge, Ruffini has breached the Employment Agreement by failing to return to OMG all records, materials, memoranda and other data constituting or pertaining to OMG's Confidential Information.

51. As a direct and proximate result of the unlawful activity set forth in Paragraphs 45-50 above, OMG has and continues to suffer irreparable harm. Unless restrained and enjoined by this Court, such conduct will permit Sirius and others to gain an unfair competitive advantage over OMG.

52. As a direct and proximate result of the unlawful activity set forth in Paragraphs 45-50 above, OMG has and continues to suffer damages in an amount that is not presently ascertainable, but exceeds $75,000.00 and will be proven at trial.

## COUNT II
## TORTIOUS INTERFERENCE WITH A CONTRACT

53. OMG incorporates each and every allegation of Paragraphs 1-52 of the Complaint as though fully set forth herein.

54. The Non-Disclosure Agreement is a valid enforceable agreement.

55. OMG and its predecessors have performed all of their obligations under the Non-Disclosure Agreement.

56. Sirius has actual knowledge of the Non-Disclosure Agreement.

57. At Sirius' direction and with Sirius' knowledge, Ruffini has breached the Non-Disclosure Agreement by using the Confidential Information, Know How, Technology and other trade secrets of OMG.

58. At Sirius' direction and with Sirius' knowledge, Ruffini has breached the Non-Disclosure Agreement by disclosing the Confidential Information, Know How, Technology and other trade secrets of OMG.

59. At Sirius' direction and with Sirius' knowledge, Ruffini has breached the Non-Disclosure Agreement by using OMG's Confidential Information, Technology, Know How and other trade secrets for the benefit of third parties and for his own benefit.

60. The Non-Disclosure Agreement provides OMG with a right of injunctive relief in the event it is breached.

61. As a direct and proximate result of the unlawful activity set forth in Paragraphs 53-59 above, OMG has and continues to suffer irreparable harm. Unless restrained and enjoined by this Court, such conduct will permit Sirius and others to gain an unfair competitive advantage over OMG.

62. As a direct and proximate result of the breaches set forth in Paragraphs 53-59 above, OMG has and continues to suffer damages in an amount that is not presently ascertainable, but exceeds $75,000.00 and will be proven at trial.

## COUNT III
## TRADE SECRET MISAPPROPRIATION

63. OMG incorporates each and every allegation of Paragraphs 1-62 of the Complaint as though fully set forth herein.

64. OMG owns the rights to protectable trade secrets in the Technology and the Know How.

65. The Technology and the Know How are the result of a substantial investment of time and money by OMG and its predecessors.

66. The Technology and the Know How cannot be ascertained by reasonable lawful means.

67. The Technology and the Know How provide OMG with a commercial benefit because they are not generally known.

68. OMG and its predecessors have taken reasonable steps to insure that the Technology and the Know How remain confidential.

69. Ruffini had an obligation to OMG not to use or disclose the Technology and the Know How.

70. Sirius had actual knowledge that Ruffini had an obligation to OMG not to use or disclose the Technology and the Know How.

71. With Sirius' knowledge and at Sirius' direction, Ruffini used the Technology and the Know How for his own benefit, for the benefit of Sirius and for the benefit of other third parties without OMG's consent.

72. Ruffini, with Sirius' knowledge and at Sirius' direction, has disclosed the Technology and the Know How without OMG's consent.

73. As a direct and proximate result of the unlawful activity set forth in Paragraphs 63-72 above, OMG has and continues to suffer irreparable harm. Unless restrained and enjoined by this Court, such conduct will permit Sirius to gain an unfair competitive advantage over OMG.

74. As a direct and proximate result of Sirius' unlawful activity, OMG has and continues to suffer harm in an amount that is not presently ascertainable, but exceeds $75,000.00 and will be proven at trial.

## COUNT IV
## UNFAIR COMPETITION

75. OMG incorporates each and every allegation of Paragraphs 1-74 of the Complaint as though fully set forth herein.

76. Sirius and OMG are competitors.

77. By using the Technology and the Know How to sell formulae and processes for electroless nickel applications in connection with thin-film memory disks, and providing manufacturing know how in connection with electroless nickel applications for thin-film

memory disks, Sirius is misappropriating OMG's rights in and to the Technology and the Know How and misappropriating the skill, expenditures and labor of OMG.

78. By using the Technology and the Know How to sell formulae and processes related to electroless nickel applications in connection with thin-film memory disks, and providing manufacturing know how in connection with electroless nickel applications for thin-film memory disks, Sirius is engaged in unfair competition in violation of the common law of the State of New York.

79. The acts of Sirius alleged in Paragraphs 75-78 above were committed willfully and with the intention of harming OMG.

80. As a direct and proximate result of the unlawful activity set forth in Paragraphs 75-79 above, OMG has and continues to suffer irreparable harm. Unless restrained and enjoined by this Court, such conduct will permit Sirius to gain an unfair competitive advantage over OMG.

81. As a direct and proximate result of the unlawful activity set forth in Paragraphs 75-79 above, OMG has and continues to suffer harm in an amount that is not presently ascertainable, but exceeds $75,000.00 and will be proven at trial.

## COUNT V
## CONVERSION

82. OMG incorporates each and every allegation of Paragraphs 1-81 of the Complaint as though fully set forth herein.

83. OMG owns the Technology and the Know How.

84. Sirius intended to and has appropriated the Technology and the Know How to the exclusion of OMG by using the Technology and the Know How to interfere with OMG's relationship with Komag.

85. The acts of Sirius alleged in Paragraphs 82-84 above were committed willfully and with the intention of harming OMG.

86. As a direct and proximate result of the unlawful activity set forth in Paragraphs 82-84 above, OMG has and continues to suffer irreparable harm. Unless restrained and enjoined by this Court, such conduct will permit Sirius to gain an unfair competitive advantage over OMG.

87. As a direct and proximate result of Sirius' unlawful activity, OMG has and continues to suffer harm in an amount that is not presently ascertainable but exceeds $75,000.00 and will be proven at trial.

WHEREFORE, OMG prays that this Court enter an Order:

A. Enjoining Defendant, its officers, directors, owners, shareholders, independent contractors, subsidiaries, affiliates or anyone acting in concert with Defendant, or on Defendant's behalf, from:

    1. Using the Technology or the Know How;

    2. Using OMG's Confidential Information; and

    3. Using any imitation or derivation of the Technology or the Know How.

B. Requiring that Defendant account for all profits made by Defendant in connection with any commercial activity relating to their use of the Technology and/or the Know How.

C. Awarding OMG damages it has sustained as a result of Defendant's wrongful acts.

D. Awarding OMG punitive damages as a result of Defendant's wrongful acts.

E. Awarding OMG attorneys fees it has incurred as a result of Defendant's wrongful acts.

F. Awarding OMG any further relief that the Court deems just and proper.

## JURY DEMAND

OMG demands a jury on all issues triable thereby.

Dated: October 4, 2006

BOND, SCHOENECK & KING, PLLC

By: _____
Jonathan B. Fellows
Bar Roll No.: 101628
Attorneys for Plaintiff
One Lincoln Center
Syracuse, New York 13202
Telephone: 315-218-8000
Facsimile: 315-218-8100
Email: jfellows@bsk.com

Of Counsel:

JONES DAY
Robert P. Ducatman, Esq.
Robert L. Canala, Esq.
Meredith M. Wilkes, Esq.
Jenny L. Sheaffer, Esq.
Attorneys for Plaintiff
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190