1  Tharan Gregory Lanier (SBN 138784)
   JONES DAY
2  1755 Embarcadero Road
   Palo Alto, CA 94303
3  Telephone: 650.739.3939
   Facsimile: 650.739.3900
4  tglanier@jonesday.com

5  Attorney for Plaintiff
   OMG FIDELITY, INC.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| OMG FIDELITY, INC., | Case No. Misc. 07-MC-80121 (RMW) Misc. |
| Plaintiff, | [Civil Action No. 6:06cv1184 (DNH/DEP) in the U.S.D.C., N.D.N.Y.] |
| v. | **OMG FIDELITY, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL KOMAG, INC. TO PRODUCE DOCUMENTS AND THINGS PURSUANT TO SUBPOENA TO KOMAG, INC.** |
| KOMAG, INC., | |
| Defendant. | |
| | **CORRECTED VERSION ATTACHING APPENDIX A** |
| | Date:    June 11, 2006<br>Time:<br>Before:<br>Location: |

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 11, 2007 at ___ am/pm, or at such other time to be determined by Court, OMG Fidelity, Inc. ("OMG"), will and hereby does move, for an order compelling Komag, Inc. ("Komag"), to produce documents and things in response to the subpoena that was served on January 3, 2007. This motion is brought on the grounds that the discovery requests contained within such subpoena are within the permissible scope of discovery and that Komag's refusal to produce the requested discovery is without legal justification. Without relief, OMG will suffer substantial prejudice in preparing for and presenting its case at trial. This motion will be based on the Notice of Motion, Motion, Memorandum of Points and Authorities incorporated herein, the Declaration of Meredith Wilkes in support of the Motion to Compel, and exhibits thereto, the files and records in this action, and any matters of which the Court may take judicial notice. A proposed order is lodged herewith.

## RELIEF REQUESTED

OMG seeks an order compelling Komag to provide documents and things responsive to Subpoena Request Nos. 8, 11, and 12.

## STATEMENT OF ISSUES TO BE DECIDED

Whether Komag may simply object to Subpoena Request Nos. 8, 11, and 12 and refuse to provide a full and complete response even though these requests address relevant issues.

OMG seeks documents and physical samples reflecting Komag's attempts and/or failures to secure electroless nickel products. The underlying lawsuit, in which OMG is the plaintiff, involves the misappropriation of trade secrets relating such electroless nickel products. Under New York law, a competitor's knowledge or use is relevant. Thus, the requested documents and things in Komag's possession are relevant to the ultimate issue of fact in OMG's trade secret litigation. Komag, however, has refused to produce the requested discovery by objecting to its relevance.

OMG is entitled to the requested discovery pursuant to Fed. R. Civ. P. 26(b)(1) because it is reasonably calculated to lead to the discovery of admissible evidence. Moreover, the discovery

sought is not cumulative nor duplicative of discovery previously produced. These requests at issue are narrowly focused to documents and things relating to Komag's attempts and/or failures to secure alternative sources of electroless nickel products. This information cannot be obtained from a more convenient source since these topics relate to Komag's efforts and thus Komag possesses this information. The burden or expense associated with these requests is slight given that Komag has already undertaken a search of its files for documents and secured physical samples in response to other subpoena requests not at issue in this motion. The balance of effort to respond versus importance of the requested information weighs heavily in favor of granting OMG's motion to compel substantive responses to Subpoena Request Nos. 8, 11, and 12.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

OMG served Komag with a subpoena seeking physical samples and documents central to OMG's trade secret misappropriation litigation, presently pending in the United States District Court for the Northern District of New York.[1] In this litigation, OMG maintains that its electroless nickel formulations (used for plating nickel on memory disks) and related know how are trade secrets. Komag, OMG's customer, manufactures memory disks using electroless nickel solutions, including OMG's electroless solutions. The subpoena requests at issue relate to Komag's attempts to obtain alternative sources of electroless nickel products. These efforts are relevant because, under New York law, OMG must establish that its formulations and know how provide a commercial advantage because they are not generally known by OMG's competitors. The requests at issue narrowly focus on the formulations, and the responsive information is probative of this ultimate issue of fact.

Komag does *not* contend that it does not have responsive samples and documents. Rather, Komag flatly refuses to provide full and complete responses alleging that such materials are not relevant. OMG has repeatedly explained to Komag the importance of these materials and has

---

[1] OMG's Subpoena containing Request Nos. 8, 11, and 12 is attached as Exhibit 2 to the Declaration of Meredith M. Wilkes, filed concurrently herewith. (OMG exhibits referenced herein are also attachments to Wilkes Declaration.) Komag's responses to these discovery requests are attached as Exhibit 3.

granted various extensions to Komag to respond to the subpoena in the hopes that Komag would provide all the relevant and responsive materials. Unfortunately, it is now four months from the service of the subpoena, and Komag is categorically refusing to provide the responsive samples and documents. OMG is entitled to such materials in response to its properly propounded subpoena requests. OMG respectfully requests that this Court so order.

## II.    FACTUAL BACKGROUND

On October 4, 2006, OMG filed a lawsuit in the United States District Court for the Northern District of New York ("the Litigation") against Sirius Technology, Inc. ("Sirius") for misappropriation of trade secrets, tortious interference with a contract, unfair competition, and conversion. (*See* Exh. 1). The technology in this suit relates to electroless nickel applications for memory disks. OMG owns proprietary formulae and processes for these applications.

Sirius employs Alan Ruffini, who worked for OMG and supervised OMG's research and development in electroless nickel. While employed by OMG, Ruffini worked extensively with Komag and oversaw the development of OMG formulae to meet Komag's changing demands. All of this formulation information and know how is proprietary to OMG and represents trade secrets that are critical to OMG maintaining its position as the industry leader in electroless nickel. Ruffini left OMG in 2001, but remains bound by his Employment Agreement with OMG, which prevents Ruffini from using or disclosing any of OMG's confidential information. Komag remains a customer of OMG.

In derogation of Ruffini's Employment Agreement and Komag's Volume Purchase Agreement, Komag began working with Ruffini to replicate the electroless nickel products that OMG was supplying to Komag. On information and belief, Komag has tried and failed to obtain equivalent formulations, but continues to secretly seek out competitive sources, including using Ruffini as a window into OMG's confidential formulae and know how.

On January 3, 2007, OMG served Komag with a subpoena for various documents and things. (*See* Exh. 2). Komag manufactures memory disks using eletroless nickel solutions, including those it purchases from OMG. At issue in this motion are Subpoena Request Nos. 8, 11, and 12, which seek physical samples and documents relating to electroless nickel

formulations from sources other than OMG. These materials are relevant because under New York law, a trade secret is defined as "any formula…which gives [] an opportunity to obtain an advantage over competitors who do not know or use it." *Computer Assoc. Int'l, Inc. v. Bryan*, 784 F. Supp. 982, 987 (E.D.N.Y. 1992) (citation omitted).

On January 16, 2007, Komag responded to OMG's subpoena by propounding various general objections and specifically objecting to the relevance of Request Nos. 8, 11, and 12 as "seek[ing] information of [sic] documents concerning aspects of Komag's business and ongoing research and development activities that have no bearing on the subject matter of the underlying action…." (*See* Exh. 3). In addition to its objections, Komag also requested additional time to respond to the subpoena requests. (*See id.*, General Objection No. 15, at 4).

One week later, on January 23, 2007, OMG responded to these objections by explaining the relevance of the materials sought by Request Nos. 8, 11, and 12 in light of the causes of action in the New York lawsuit: "an element of OMG's claims are that there is no one who can do what OMG does the way that OMG does it. As such, attempts to do so, and the corresponding failures of others, including that of your client, meet the threshold for discovery." (*See* Exh. 4). OMG also provided a copy of the Complaint (*See* Exh. 1) setting out these claims and stated it would treat Komag's production in accordance with the Protective Order entered in the Litigation (*See* Exh. 5).

On January 24, 2007, Komag responded to OMG's straightforward explanation of why the requested materials are relevant by arguing that "a third party's non-public information is irrelevant to a trade secret case regardless of whether it is similar to that of the plaintiff or not." (*See* Exh. 6). While Komag admits that "[a]s a trade secret plaintiff, OMG's burden is to prove that the information at issue is a trade secret," it then asserts the bizarre conclusion that the materials requested in Request Nos. 8, 11, and 12 – probative of the differences in formulations, to the extent that they exist, and/or how these formulations may be kept as secrets – are "irrelevant" and refuses to respond.

On February 1, 2007, OMG's attorney spoke with Komag's attorney, explaining that Request Nos. 8, 11, and 12 encompassed anything relating to Sirius, as well as any other third

1  parties. (*See* Exh. 7). Komag then backtracked on its original objection and stated it would be
2  willing to produce documents and things related to Sirius. (*See id.*) However, Komag maintained
3  its abject refusal to produce any document or thing relating to any other entity. (*See id.*) On
4  February 7, 2007, OMG responded that it would review Komag's production and seek the
5  necessary relief if the production was incomplete. (*See* Exh. 8). In addition, OMG agreed to yet
6  another extension of time requested by Komag. (*See id.*)

7  On March 1, 2007, the parties again spoke concerning the production, and Komag's
8  attorney stated that physical samples would *not* be produced. (*See* Exh. 9). OMG again stated
9  that "[i]f necessary, OMG will take the appropriate measures to enforce its rights." (*See id.*) On
10  March 6, 2007, Komag capitulated, in part, and stated that it would produce samples related to
11  formulations developed with Sirius, but would not produce any samples from any other third
12  parties, stating: "Komag continues to stand by its objections with respect to providing samples of
13  chemistry that is unrelated to Sirius." (*See* Exh. 10).

14  On March 27, 2007, OMG requested a confirmation of what samples Komag would, in
15  fact, be producing. (*See* Exh. 11). Komag responded on April 4, 2007 that "the samples Komag
16  produces will only include the chemistry related to Sirius." (*See* Exh. 12). In addition, Komag
17  explained that it "fully intends to produce a privilege and redaction log" but that it needed an
18  additional "two weeks" to prepare it. (*See id.*)

19  On April 16, 2007, OMG wrote to Komag again stressing the relevance of materials
20  sought by Request Nos. 8, 11, and 12 and explaining that Komag's "success rate, or lack thereof,
21  has a direct bearing on essential elements of OMG's trade secret, unfair competition and related
22  claims in this litigation." (*See* Exh. 13). In an attempt to efficiently resolve these issues and
23  obtain the discovery, OMG relayed the offer of Magistrate Judge Peebles, who is overseeing
24  discovery disputes in the Litigation, that he is willing to hear any third-party discovery disputes
25  on an expedited basis and will waive personal appearances so as to resolve discovery disputes in a
26  cost-effective manner. (*See id.*)

27  Komag responded on April 18, 2007 by summarily dismissing the relevance of OMG's
28  requested documents and things and stating that "[s]uch documents have no bearing on OMG's

dispute with Sirius." (*See* Exh. 14). Komag also refused Magistrate Peeble's offer for expedited review of this dispute. (*See id.*)

In a final effort to avoid involving this Court, OMG wrote to Komag on May 1, 2007, explaining that "the commercial advantage derived by OMG as a result of its trade secrets because they are not generally known is central to this litigation. Thus, Komag's use and experimentation with electroless nickel formulations from sources other than OMG are unquestionably relevant to the ultimate issue of fact being litigated." (*See* Exh. 15). OMG offered to meet and confer again and attempt to resolve this dispute. Komag waited one week to respond to this offer, only to restate its same relevance objection and explain that it "continues to disagree" with OMG's need for these relevant materials. (*See* Exh. 16). OMG has granted Komag various extensions of time to respond in the hopes that Komag would provide a full and complete response to these requests. Unfortunately, over four months have now passed since the subpoena was served, and Komag has given OMG no alternative but to resort to the assistance of this Court to obtain relevant documents and things responsive to Request Nos. 8, 11, and 12.

### III. THE APPLICABLE LAW

"Relevant evidence" is broadly defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. The Federal Rules of Civil Procedure contemplate liberal discovery, encompassing matters relevant to any claim or defense. *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "[T]he broad standard of relevance under Rule 26 does not require that the information sought necessarily be directed at the ultimate fact in question, only that the information sought be reasonably calculated to lead to admissible evidence in the underlying litigation." *Id.* at 682-83 (citation omitted).

This liberal standard for discovery is arguably even more important in the context of a third-party subpoena. As this Court has recognized, "[a] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt…the court should be permissive." *Compaq Computer Corp. v. Packard*

*Bell Elec., Inc.*, 163 F.R.D. 329, 335 (N.D. Cal. 1995) (citation and internal quotations omitted). To that end, when a nonparty refuses to respond properly to a subpoena, a party moving to compel must demonstrate that the information requested in the subpoena: 1) is relevant to the issues in the lawsuit; and 2) is not unduly burdensome to produce. *Gonzales*, 234 F.R.D. at 680 (citation omitted).

### IV. KOMAG HAS IMPROPERLY REFUSED TO PRODUCE RELEVANT SAMPLES AND DOCUMENTS

#### A. The Requested Documents And Things Are Relevant To OMG's Trade Secret Litigation.

To date, Komag has refused to produce physical samples and documents relating to electroless nickel formulations from sources other than OMG and Sirius. These samples and documents are patently relevant to the underlying lawsuit between OMG and Sirius. Indeed, New York law defines a trade secret as "any formula…which gives [] an opportunity to obtain an advantage over competitors who do not know or use it." *Computer Assoc.*, 784 F. Supp. at 987 (citation omitted). OMG alleges that it possesses such trade secret formulations and related know how and that these trade secrets afford it an advantage over **competitors who do not know or use them**. Komag's use and experimentation with electroless nickel from alternative sources and the ability or inability of the alternative sources to meet the performance standards of OMG's formulations certainly meet the relevance standard. OMG is entitled to discover information concerning these attempts, failures, or successes.

As detailed above, OMG has made repeated attempts to communicate the importance of these materials to Komag. Yet, Komag stubbornly refuses to do anything more than parrot its same baseless relevance objection. Komag complains in its correspondence that information as to an alternative electroless nickel formulation is "irrelevant…regardless of whether it is similar to that of the plaintiff or not." (*See* Exh. 6). Such allegation flies in the face of New York trade secret law, which recognizes that a competitor's knowledge or use *is* relevant. *Computer Assoc.*, 784 F. Supp. at 987 (citation omitted). In addition, even accepting, *arguendo*, that such alternative formulation is also as a "trade secret" – as Komag's correspondence hypothesizes – then this information about another electroless nickel formulation being maintained as a trade

secret would be probative of OMG's allegations that its formulation is *also* suitable for such protection. Komag's refusal to respond based on relevance is untenable.

### B. The Requested Documents And Things Are Not Unduly Burdensome To Produce.

The requested materials are encompassed by narrowly-focused requests that are confined to specific subject matter and restricted by date (for Request Nos. 11 and 12). Of note, Komag does not allege that such samples and documents do not exist. Nor does Komag pretend that such production would be an undue burden. Rather, Komag pins its hopes on a relevance objection that is unsupported.

Given the liberal standard for third-party subpoenas, the importance of competitive uses or failures in establishing a trade secret, and the minimal burden to produce the requested materials, Komag's relevance objection and consequent refusal to respond is simply a dog that will not hunt. Indeed, this Court's opinion in *Compaq* not only provides the legal framework for evaluating a third-party subpoena – instructing that a court should be "permissive" when evaluating the relevancy of a discovery request pertinent to an action in another district – but also a factual analog. *Compaq*, 163 F.R.D. at 335 (citation and internal quotations omitted). That is, the subpoena in *Compaq* sought to discover the practices of a competitor as relevant to the "industry standard" in the sale of computers. *Id.* at 338. This Court recognized that while an expert may ultimately be called on to testify about the practices of competitors in the industry, "such testimony must be based on something more than mere surmise. The expert will need to take a survey of competitor practices and, because the sort of information needed is maintained confidentially by [the subpoenaed third party] – and presumably the other subpoenaed manufacturers – the survey cannot be conducted informally but only through the formal subpoena power of the federal courts." *Id.* (Footnote omitted.)

OMG similarly seeks to uncover information about the attempts and failures of others in the electroless nickel industry. The information OMG requests by way of its subpoena is relevant under New York trade secret law. As in *Compaq*, gathering such relevant information "cannot be conducted informally but only through the formal subpoena power of the federal courts." *Id.*

1  (Footnote omitted.) Komag cannot resist such properly propounded discovery requests by
2  complaining of a lack of relevance.

3  **V.    CONCLUSION**

4        For the foregoing reasons, OMG respectfully requests that the Court order Komag to
5  provide full and complete responses to Subpoena Request Nos. 8, 11, and 12.

Dated: May 7, 2007

Respectfully submitted,

JONES DAY

By _____

Tharan Gregory Lanier (SBN 138784)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: 650.739.3939
Facsimile: 650.739.3900
tglanier@jonesday.com

Attorney for Plaintiff
OMG FIDELITY, INC.

CLI-1513008