TERRY T. JOHNSON, State Bar No. 121569
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: tjohnson@wsgr.com

JENNY L. DIXON, State Bar No. 192638
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: jldixon@wsgr.com

Attorneys for Defendant
KOMAG, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OMG FIDELITY, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>KOMAG, INC.,<br><br>    Defendant. | CASE NO.: 07-mc-80121 (RMW) Misc<br><br>[Civil Action No. 6:06cv1184<br>(DNH/DEP in the U.S.D.C., N.D.N.Y.]<br><br>**KOMAG'S OPPOSITION TO OMG'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS PURSUANT TO THIRD PARTY SUBPOENA**<br><br>Date: June 13, 2007<br>Time: 9:30 a.m.<br>Before: Magistrate Judge Seeborg<br>Location: Courtroom #4, 5th Floor |

DEF'S OPPOSITION TO MOTION TO COMPEL
PURSUANT TO SUBPOENA TO KOMAG, INC.

C:\NrPortbl\PALIB1\CAJ\3118681_2.DOC

1  Komag Incorporated respectfully submits this Memorandum of Points and Authorities in
2  support of OMG Fidelity, Inc.'s Motion to Compel Production of Documents and Things
3  ("Motion").

## INTRODUCTION

OMG has brought suit against Sirius Technology, Inc. for misappropriation of OMG's trade secrets concerning electroless nickel applications. Komag is a customer of OMG that recently began working with Sirius to develop an alternative electroless nickel product to use in its production of memory disks. OMG served a third party subpoena on Komag seeking, among other items, documents and physical samples of electroless nickel products from other third parties that are OMG's competitors.

OMG apparently wants to know whether its competitors are using the same or similar formula components as those it considers trade secrets. By this Motion, OMG seeks to compel the production of this information from their mutual customer Komag. This information and the formulations, however, are at least highly confidential and possibly trade secrets of OMG's competitors. OMG's request for this discovery should be denied because the information it seeks is not relevant to the OMG-Sirius litigation, is overly burdensome to third party Komag, and, even if it were relevant, it could be more efficiently obtained directly from OMG's competitors.

The information sought is irrelevant because the confidential formula components used by OMG's competitors have no bearing on whether the components used by OMG are publicly available—which is the threshold inquiry in determining whether a trade secret exists. Komag is a non-party to the OMG-Sirius litigation and has already produced all of its documents and materials relating to its work with Sirius—the only party alleged to have been involved in a misappropriation of OMG's trade secrets. Thus, it is unduly burdensome to require Komag to produce irrelevant material concerning OMG's competitors that is the subject of third party confidentiality agreements. The burden is substantial because neither Komag nor the competitors are parties to the OMG-Sirius litigation and they will not have any control on how the information is used therein.

1    Even if OMG's requests were relevant to the litigation, they should be directed to OMG's
2    competitors—not Komag.  If OMG wants to know if its competitors are using components that
3    OMG considers to be a trade secret, or if its vendors consider those components to be trade
4    secrets it should ask them directly.  That way, these competitors could bear the expense and
5    burden of defending their own confidential information, not non-party Komag.

6    OMG's back-door attempt to obtain its competitors' confidential information and
7    potential trade secrets is improper.  The burden to Komag and the vendors outweighs any
8    purported need OMG has for this information.  Accordingly, the Court should deny OMG's
9    Motion.

10                              **BACKGROUND**

11   **A.    The Parties**

12   OMG is a producer of electroless nickel applications, including chemistry that is used in
13   memory disk technology.  *See* Declaration of Meredith M. Wilkes in support of OMG's Motion
14   to Compel ("Wilkes Decl."), Ex. 1 at ¶ 7.  OMG has alleged that it owns proprietary technology,
15   formulae and processes related to electroless nickel applications for use with memory disks.
16   Wilkes Decl., Ex. 1 at ¶ 9.

17   Komag is a leading independent supplier of thin-film disks, the primary high-capacity
18   storage medium for digital data in computers and consumer appliances.  Since being founded in
19   1983, Komag has been located in San Jose, California and has led the industry in production
20   volume and technology for thin-film disks.  Komag purchases electroless nickel chemistries from
21   OMG in order to produce its thin-film disks.  Komag has been OMG's customer for several
22   years, but is considering alternative sources of electroless nickel chemistry.  Sirius has been
23   working with Komag for approximately two years to co-develop electroless nickel products and
24   processes that meet Komag's requirements and that would allow Komag to blend its own
25   electroless nickel chemistries.

26   **B.    The Underlying Action**

27   OMG filed suit against Sirius in District Court for the Northern District of New York (the
28   "New York Court") on October 4, 2006.  *See* Wilkes Decl., Ex. 1.  Komag is <u>not</u> a defendant in

1  this action. OMG alleges claims against Sirius for tortious interference with a former
2  employee's contracts (Counts I and II), misappropriation of trade secrets (Count III), unfair
3  competition resulting the alleged misappropriation of trade secrets (Count IV) and conversion of
4  the alleged trade secrets (Count V). *Id.* All of the alleged claims stem from Sirius' employment
5  of OMG's former employee Dr. Alan Ruffini—who is not named as a defendant. *Id.*
6        The crux of the OMG-Sirius litigation is Sirius' alleged misappropriation of OMG's
7  purported trade secrets through Dr. Ruffini: OMG alleges that Dr. Ruffini has used OMG's trade
8  secrets and "know how" to approach OMG's customers. *Id.* at ¶¶ 34-35. Komag is the only
9  customer identified as having been approached by Dr. Ruffini. There are absolutely no
10  allegations as to misappropriation of trade secrets by other competitors.
11        OMG has not identified with any specificity the alleged trade secrets it claims Sirius has
12  misappropriated. *See* Declaration of Jenny L. Dixon, filed herewith ("Dixon Decl."), Exs. A, C
13  (noting that in response to interrogatories seeking the identification of the trade secrets alleged
14  misappropriated OMG "referred [Sirius] to 25,749 pages of documents, without explanation, and
15  to a laundry list of numerous chemical components and process steps involved in electroless
16  nickel"). OMG recently sought a four-month extension of time for all upcoming deadlines in its
17  action against Sirius. OMG premised its request on the need to obtain the discovery from
18  Komag at issue in this Motion. Dixon Decl., Ex. B. The New York Court denied OMG's
19  request, but did allow a 30-day extension on the close of discovery and exchange of expert
20  reports. Dixon Decl., Ex. D.
21        **C.    The Subpoena**
22        On January 3, 2007, OMG served non-party Komag with a subpoena seeking broad
23  categories of documents and things. Wilkes Decl., Ex. 2. Given the breadth of the document
24  requests and the fact that the bulk of the responsive material was in Malaysia, Komag requested
25  additional time to produce responsive documents. Dixon Decl. ¶ 2. Komag timely served its
26  written responses and objections to the subpoena on January 17, 2007. Wilkes Decl., Ex. 3. In
27  late January 2007 and early February 2007, the parties met and conferred regarding Komag's
28

1  objections and responses to Request Nos. 8, 11, and 12.[1]  *See* Dixon Decl. ¶¶ 4-5; Wilkes Decl.,

2  Exs. 4, 6 and 7.  These Requests sought documents concerning Komag's efforts to produce

3  electroless nickel products at its facilities (Req. 8) or obtain electroless nickel products from

4  someone other than OMG from 1996 to present (Req. 12) and physical samples of any

5  electroless nickel product that Komag had acquired from anyone other than OMG since 1996

6  (Req. 11).  Komag objected to these requests to the extent they sought information concerning

7  vendors of electroless nickel product other than Sirius.  These were the only requests for which

8  Komag sought any modification of or limitation to its document production.[2]

9      After explaining that information on Komag's dealings with non-parties concerning

10  electroless nickel products was not relevant to OMG's claims against Sirius, Komag made clear

11  to OMG that it would produce documents relating to Sirius only in response to these requests.[3]

12  Wilkes Decl., Exs. 6-7.  Despite OMG's suggestion to the contrary (Motion at 4-5), Komag has

13  consistently maintained its objection to producing documents and chemistry samples from any

14  third parties since the objection was first made in January 2007.  Dixon Decl., ¶¶ 4-5; Wilkes

15  Decl., Exs. 10, 12, 14, 16.

16      On April 16, 2007, OMG requested that Komag consent to the jurisdiction of the

17  Magistrate Judge assigned to the OMG-Fidelity litigation in the New York Court.  Given that the

---

[1] In addition to its specific responses to these Requests, Komag interposed numerous general objections that are relevant to this dispute.  Komag objected to the Requests on the grounds that they were burdensome and did not comply with Fed. R. Civ, P. 45(c) (General Objection 1); that OMG's failed to identify its own "trade secret claims to Komag in a manner such that Komag could accurately ascertain the proper scope and limits of the discovery sought" (General Objection 3); that OMG sought documents from Komag that were subject to third party confidentiality obligations (General Objection 9); and that OMG sought documents, including third party trade secrets, that have nothing to do with its dispute with Sirius (General Objections 13-14).  *See* Wilkes Decl., Ex. 3 at 2-4.

[2] Rather than battle with OMG to narrow each of its incredibly broad document requests, non-party Komag agreed to produce all non-privileged, responsive documents for the majority of the requests.  Ultimately, Komag produced approximately 17,342 pages of documents and 10 different physical samples of the electroless nickel chemistry that was formulated in conjunction with Sirius.  Dixon Decl., ¶ 3.

[3] Komag always intended to produce documents and material related to Sirius in response to these requests and clarified this in the course of the parties' meet-and-confers.  Dixon Decl., ¶¶ 4-5.

subpoena was issued out of the Northern District of California, Komag advised OMG that this Court would be the appropriate forum to hear any motion that OMG elected to bring.[4]  This Motion followed.

**ARGUMENT**

**I.  THE MOTION TO COMPEL SHOULD BE DENIED BECAUSE THE BURDEN ON KOMAG OUTWEIGHS THE RELEVANCE, IF ANY, OF THE REQUESTED INFORMATION**

The discovery OMG seeks from Komag concerning OMG's competitors runs afoul of the protections afforded to non-parties in responding to subpoenas.  Federal Rule of Civil Procedure 45, which governs third party discovery, provides, in part "[a] party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Fed. R. Civ. P 45(c)(1).  As the Ninth Circuit recently stated:

> Underlying the protections of Rule 45 is the recognition that the word non-party serves as a constant reminder of the reasons for the limitations that characterize third party discovery.  Thus, a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.

*Gonzales v. Google*, 234 F.R.D 674, 680 (N.D. Cal. 2006) (internal citations omitted).  *See also Beinin v. Center for Study of Popular Culture*, No. C 06-2298 JW (RS), 2007 WL 832962 at *5 (N.D. Cal. Mar. 16, 2007) (denying motion to compel non-party discovery.  "Courts balance the need for discovery against the burden imposed on the person from whom documents are sought, and the status of the person as a nonparty is a factor that weighs against disclosure."); *Fitzpatrick v. Arco Marine, Inc.*, 199 F.R.D. 663, 664 (N.D. Cal. 2001) (denying motion to compel non-party discovery where party seeking discovery made only a "weak and conclusory" showing of need, while the burden on the non-party was "significant").  To this end, a party requesting "disclosure of a trade secret or other confidential research, development, or commercial

---

[4] OMG implies that Komag's invocation of this Court's jurisdiction is improper in some way.  Motion at 6; Dixon Decl., Ex. B.  It is not; procedural and jurisdictional requirements exist for a reason and Komag is entitled to have this Motion heard before this Court.

1  information" from a non-party must show "a substantial need for the testimony or material that

2  cannot be otherwise met without undue hardship . . . ." Fed. R. Civ. P 45(c)(3)(B).

3  OMG suggests that the "liberal standard for discovery is arguably even more important in

4  the context of a third-party subpoena." Motion at 6. The Ninth Circuit has made clear, however,

5  that "a general policy of permissiveness" for discovery does not mean that a court ignores the

6  limitations placed on discovery from and protections afforded to non-parties. *Gonzales*, 234

7  F.R.D. at 680-81.

8  **A.   The Discovery Sought Is Not Relevant**

9  The discovery OMG seeks from Komag concerning its competitors' electroless nickel

10  products is not relevant to the OMG-Sirius litigation. OMG's attempt to explain the relevance of

11  this discovery (Motion at 7-8) is unpersuasive.

12  Under New York law, in order to establish a misappropriation of trade secret claim,

13  plaintiff must prove: "(1) it possessed a trade secret, and (2) defendant is using the trade secret

14  in breach of an agreement, confidence, or duty, or as a result of discovery by improper means."

15  *Integrated Cash Management Services, Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d

16  Cir. 1990) (internal citations omitted). While courts consider a number of factors to determine

17  whether particular information is a trade secret, "the most important consideration remains

18  whether the information was secret." *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir.

19  1986) (internal citations omitted) (finding that "the availability information . . . was not [a trade]

20  secret because it was a matter of public knowledge"). "The subject of a trade secret must be

21  secret, and must not be of public knowledge or of a general knowledge in the trade or business."

22  *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974).

23  The confidential information OMG requests from Komag—documents and formula

24  components that OMG's competitors use in their electroless nickel products—is not probative of

25  whether OMG's formula components are trade secrets or publicly known or available. Whether

26  OMG's competitors may or may not have used a component in their past work with Komag has

27  no bearing on what components either OMG or its competitors may be presently using. OMG's

28  claim that "Komag's use and experimentation with electroless nickel from alternative sources

1  and the ability or inability of the alternative sources to meet the performance standards of
2  OMG's formulations certainly meet the relevance standard" (Motion at 7) is nothing more than a
3  conclusory statement. Conclusory statements are insufficient to establish the requisite need for
4  inspection. *Fitzpatrick*, 199 F.R.D. at 664. OMG fails to explain how this discovery is relevant
5  to proving its misappropriation of trade secrets case Sirius. Moreover, what non-party Komag or
6  non-party competitors have or have not done with electroless nickel is irrelevant to the OMG-
7  Sirius litigation.

8  OMG next claims that the fact that non-parties may be able to claim trade secret
9  protection for their electroless nickel products "would be probative of OMG's allegations that its
10 formulation is *also* suitable for such protection." Motion at 7-8 (emphasis in original). Whether
11 OMG's formulation constitutes a trade secret turns on whether OMG can establish that it is not
12 publicly available. OMG cannot establish this by looking at its competitors' non-public
13 confidential information.

14 The information OMG seeks from its competitors through their mutual customer Komag
15 is simply not relevant to the OMG-Sirius litigation.

16 **B.    The Discovery Is Unduly Burdensome**

17 OMG's request for its competitors' electroless nickel formulations imposes an undue
18 burden on Komag. Komag is a non-party to the litigation and has already turned over all of its
19 documents and materials relating to its work with Sirius, the only party alleged to have been
20 involved in misappropriation of OMG's trade secrets. Dixon Decl., ¶ 3. Komag has expended
21 time and resources and incurred substantial expenses in responding to OMG's subpoena. *Id.*

22 It is burdensome to require Komag to turn over OMG's competitors' materials for several
23 reasons. First, as discussed *infra*, this material is of no relevance to the OMG-Sirius litigation.
24 Next, this material is the subject of confidentiality agreements between Komag and its vendors
25 and is quite possibly the vendors' trade secrets. Komag has an obligation to ensure that it
26 maintains the confidentiality of information that has been entrusted to it by the vendors from
27 which it has purchased electroless nickel. As the Ninth Circuit noted in *Gonzalez v. Google*, one
28 of the factors to consider in assessing burden is whether the subpoena seeks "trade secret or

1  confidential commercial information from a nonparty." 234 F.R.D. at 684. The requesting party
2  must show a "substantial need for the testimony or material that cannot be otherwise met without
3  undue hardship." *Id.* Here, OMG fails to demonstrate a "substantial need" for the information it
4  seeks from Komag or that it cannot be obtained from other sources "without undue hardship."
5  OMG does not show that it cannot seek the information from the vendors directly. Thus, any
6  request by OMG for such information should be directed to the vendor directly, not their mutual
7  customer Komag.

8  Similarly, if OMG wants to know if its competitors are using components that OMG
9  considers to be a trade secret, or if its competitors consider those components to be trade secrets,
10 it should ask them directly. This is particularly important since Komag typically does not know
11 the individual components of the electroless nickel that it purchases, and so could not provide
12 useful testimony on this subject. If OMG went to its competitors, rather than non-party Komag,
13 the competitors, who are in the best position to evaluate the discovery OMG seeks, could bear
14 the expense and burden of defending (or not defending) their own confidential information.
15 Indeed, OMG admits this when it asserts that the fact that its competitors may be able to claim
16 trade secret protection for their electroless nickel products "would be probative of OMG's
17 allegations that its formulation is also suitable for such protection." Motion at 7-8.

18 Even if the Court were to find that OMG's requests are relevant to the OMG-Sirius
19 litigation, the probative value of the information sought is minimal at best, but the burden to
20 Komag and its vendors is great. There is the burden of collecting the information and physical
21 samples and ensuring that it is produced under some form of a protective order, but there is also
22 the very real fact that these non-parties will have great difficulties in enforcing any protective
23 order given that neither Komag nor its vendors are parties to that lawsuit. This means that they
24 will have very little ability to prevent inappropriate disclosures and will not have any knowledge
25 as to how this information is being used in the OMG-Sirius litigation. The complete lack of
26 information and control for these non-parties creates a real risk that their highly confidential and
27 trade secret information will be improperly disclosed. The potential for OMG to abuse any
28 competitors' information obtained from Komag is enormous.

1  These burdens, and the risk of disclosure of a non-party's highly confidential information outweighs the need for the discovery OMG seeks, especially given OMG's failure to demonstrate any need for disclosure of its competitors' information.  OMG's motion should be denied.  *See Beinin*, 2007 WL 832962 at *5 (denying motion to compel where burden outweighs need for information); *Fitzpatrick*, 199 F.R.D. at 664 (same).

## CONCLUSION

For the foregoing reasons, OMG's motion to compel the production its competitors' electroless nickel chemistry from Komag should be denied.

Dated:  May 23, 2007

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Jenny L. Dixon
     Jenny L. Dixon

Attorneys for Defendant
KOMAG, INC.