Tharan Gregory Lanier (SBN 138784)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: 650.739.3939
Facsimile: 650.739.3900
tglanier@jonesday.com

Attorney for Plaintiff
OMG FIDELITY, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| OMG FIDELITY, INC., <br><br>　　　　Plaintiff, <br><br>v. <br><br> KOMAG, INC., <br><br>　　　　Defendant. | Case No. Misc. 07-MC-80121 (RMW) <br><br> [Civil Action No. 6:06cv1184 (DNH/DEP) in the U.S.D.C., N.D.N.Y.] <br><br> **OMG FIDELITY, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL KOMAG, INC. TO PRODUCE DOCUMENTS AND THINGS PURSUANT TO SUBPOENA TO KOMAG, INC.** <br><br> Date:　　June 13, 2007 <br> Time:　　9:30 a.m. <br> Before:　Magistrate Judge Richard Seeborg <br> Location: Courtroom #4, 5th Floor |

## I. INTRODUCTION

This is a classic case of third-party subpoena recipient Komag, Inc. ("Komag") wanting to have its cake and eat it, too. Komag wants to avail itself of what it views to be the "protected status" of a third party in discovery, yet is sharing information with Defendant Sirius Technology, Inc. ("Sirius") in the collective hopes of defeating the trade secret claims of OMG Fidelity, Inc. ("OMG"). When it is convenient to do so, Komag seeks to avail itself of New York law, yet insists on dragging the subpoena dispute to California. As evidenced by its conduct to date, and its opposition to the pending Motion to Compel, Komag wants all of the protections of the Federal Rules of Civil Procedure, but refuses to comply with its obligations under those very same rules. As set forth more fully below, the discovery sought by OMG is relevant and Komag should be ordered to produce it.

## II. ARGUMENT

### A. THE DISCOVERY IS RELEVANT.

Komag's attempts to turn the relevance standard on its head are not lost on OMG. Instead of confronting case law in this jurisdiction which holds that a competitor's knowledge or use of the trade secret at issue *is* relevant, Komag asserts that OMG has made only "conclusory statements" that the discovery sought is relevant and, thus, is not entitled to it. Either Komag has not read OMG's Motion, or does not understand the relevance standard.

Simply put, the discovery sought need only lead to the discovery of admissible evidence. Document requests directed to Komag's attempts to obtain electroless nickel from sources other than Sirius or OMG meet that standard. First, OMG must prove that the formulation and know how stolen by Sirius are not generally known. Probative to that assertion are any formulations supplied by anyone else to Komag, OMG's customer. Second, OMG must demonstrate that it derives a commercial advantage from its trade secrets. The successes or failures of others to deliver the results that OMG delivers to Komag are certainly probative to that issue. Even if the alternative formulation (to the extent there is one) is also a trade secret, such information about another electroless nickel formulation being maintained as a trade secret would be probative of OMG's allegations that its formulation is *also* suitable for such protection. *Compaq Computer*

*Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329 (N.D. Cal. 1995). Plainly, Sirius would be interested in such information if it were *not* maintained as a trade secret, or, if it were identical to OMG's, which also makes the materials sought relevant. Finally, it is obvious that failed attempts by others in the industry to meet Komag's demands (or the time in which it took for them to be successful) are relevant in light of the remarkable speed in which Sirius was able to do so.

### B. KOMAG'S "UNDULY BURDENSOME" OBJECTION IS A SMOKE SCREEN.

The nefarious conduct in this litigation is that of Sirius which has stolen OMG's proprietary know how and formulation related to electroless nickel and is now selling it to Komag. It is no big mystery why Komag is refusing to turn over the very information which helps establish that what OMG alleges Sirius took (and that Komag is using) is proprietary to OMG. Komag realizes the reach of the injunction OMG will obtain against Sirius, and is now making every effort to stonewall OMG's legitimate discovery attempts. Such efforts are obvious from the materials attached to the Dixon declaration, the joint-defense arrangement between Sirius and Komag and Komag's resistance to turning over relevant discovery (including the four months it took to produce four boxes of paper).

OMG has propounded narrowly-focused requests that are confined to specific subject matter and restricted by date (for Request Nos. 11 and 12). For the first time, Komag now alleges that OMG is not entitled to the discovery because: (1) OMG has failed to identify with particularity the alleged trade secrets it claims to have misappropriated; and (2) that the Subpoena encompasses "broad categories of documents and things" which would compromise other confidentiality arrangements. Neither is a reason to deny OMG the discovery sought.

First, there is no basis whatsoever for Komag to allege that OMG has failed to identify its trade secrets with specificity. The Dixon declaration is devoid of any first-hand observation about the sufficiency of OMG's interrogatory answers. Moreover, nothing in the Dixon declaration suggests, even remotely, that during the numerous "meet and confers" regarding Komag's document production did Komag suggest that OMG had not identified its trade secrets

with enough particularity to determine what discovery is responsive.[1] Finally, Komag's reliance upon a letter from John Howley, counsel to Sirius, does not support that conclusion.[2] Indeed, there is nothing to suggest that Sirius has ever asked OMG to further specify its trade secrets, nor has Sirius filed a motion to compel directed toward OMG's answers to interrogatories regarding its trade secrets. The reason Sirius has not done so is because it cannot. OMG's 28-page interrogatory answers belie any good faith basis for such a motion.

Komag's reliance on its "General Objections" to the Subpoena regarding the specificity of OMG's trade secret identification is disingenuous, at best. First, Komag produced documents and things over its kitchen sink "General Objections". Moreover, nothing in the Dixon declaration, the correspondence between Komag's counsel and OMG's counsel, nor the "meet and confers" referred to in the Dixon declaration reference any alleged failure by OMG to identify its trade secrets. At no time did Komag request more specificity before it could comply with the Subpoena. It simply asked for more time in which to do so. Each time it did, OMG granted the request.

There is a three-tiered Protective Order entered in this case. (*See* Ex. 5 to Wilkes Decl.) The Protective Order, which Komag has already availed itself of, can certainly address the confidentiality of any materials produced by Komag. Indeed, OMG has produced the very core of its business, its confidential formulae and know how, pursuant to it. Thus, any confidentiality issue can certainly be addressed by the Protective Order and the confidentiality will be maintained. In any case, the mere fact that confidential documents may be at issue is not a reason to deny discovery, it is a reason to enter a Protective Order. Notably, Komag did not state any reason why the Protective Order already entered in this case, (and under which Komag has produced documents) is not suited to maintain the confidentiality of the materials OMG seeks. The reason for this omission is obvious, there is none.

---

[1] Indeed, Komag was in possession of the Complaint and the Protective Order when it contacted OMG's counsel for the first time about the Subpoena.

[2] The Dixon declaration is devoid of any showing as to the authenticity of the letter, including how Ms. Dixon came into possession of it. The same can be said for Exhibits A-D as Ms. Dixon is neither the author, intended recipient nor carbon copy of those materials, either.

Any superfluous "prejudice" to Komag can easily be remedied by OMG reimbursing Komag for the costs to duplicate its paper.[3] The prejudice to OMG if the information is not produced immediately is obvious and irreparable. Komag's failure to honor its obligations is delaying the case in New York, as evidenced by the Court's docket entries, and has resulted in OMG having to seek extensions of time. (*See* Dixon Decl., Ex. D) The delay is prejudicing not only OMG, but, according to the materials submitted by Komag, Sirius, as well. (*See* Dixon Decl., Ex. A) Sending OMG out to subpoena its competitors in no way mitigates any prejudice to anyone. It is nonsensical. OMG does not know with whom Komag has successfully or unsuccessfully trialed electroless nickel solutions. It only recently became aware that Sirius was doing so. Prior to obtaining that knowledge, OMG was not aware of any other entity that may be trialing electroless nickel with Komag. Given Komag's response to the Subpoena, it is obvious that such trials have taken place and the information related to those trials is located in one place, at Komag.[4] Rather than subpoena every possible manufacturer of electroless nickel, OMG can obtain the narrowly-tailored discovery it seeks from one source, Komag. OMG attempted to do so by issuing the Subpoena to Komag. Komag should be ordered to comply with it.

None of the case law cited by Komag dictates a different result. Understandably, Komag chooses not to confront this Court's opinion in *Compaq* which instructs: (1) that a court should be "permissive" when evaluating the relevancy of a discovery request pertinent to an action in another district; and (2) industry practices, trade secret or not, are relevant. *Compaq*, 163 F.R.D. at 335 (citation and internal quotations omitted). Instead, Komag relies on factually inapposite *Fitzpatrick v. Arco Marine, Inc.*, 199 F.R.D. 663 (N.D. Cal. 2001) and *Beinin v. Center for Study of Popular Culture*, No. C06-2298JW, 2007 WL 832962 (N.D. Cal. Mar. 16, 2007) (attached hereto as Exhibit 1). Neither case is of any moment.

---

[3] To the extent costs are involved to comply with the Subpoena, OMG is willing to reimburse Komag. Again, nothing in the Dixon declaration suggests that this request has ever been made. The reason is obvious. Komag never made it.

[4] And, as the "leading independent supplier of thin-film disks ... considering alternate sources of electroless nickel" as Komag's Opposition papers state, the discovery sought should be at Komag's fingertips. (*See* Komag's Opposition to Motion to Compel at 2).

At issue in *Fitzpatrick* was a personal injury claim by Fitzpatrick against Arco Marine. In connection with the litigation, Fitzpatrick sought discovery of Crowley Petroleum Transport, Inc. ("CPTI") to inspect an accommodation ladder on the tanker where plaintiff was injured. CPTI met the "unduly burdensome" threshold by demonstrating that compliance with the subpoena would interfere with normal ship operations, interfere with safe loading and discharge of cargo and that the gasoline additive carried on the ship would create an unsafe environment for employees and for the inspection. Because the evidence, if any, was marginally relevant and the burden to comply was substantial, the motion to compel third party CPTI was denied. In contrast, OMG has demonstrated that the materials sought are more than "marginally relevant". More importantly, Komag has not made any showing whatsoever that complying with the Subpoena interferes with Komag's day-to-day operations nor that it risks the safety of anyone.

Reliance on *Beinin* is similarly misplaced. At issue in *Beinen* was plaintiff's claim that the Center for Study of Popular Culture (the "Center") had appropriated his name and likeness in a pamphlet. Third party Mock had photographed plaintiff in 1997 in connection with the cover of a book. Several years later, plaintiff asked Mock if he had given the Center permission to use the photograph for the pamphlet. Mock had not. Mock then assigned the copyright in the photo to Beinin. *Beinin*, 2007 WL 832962, at *1. After the litigation ensued, the Center subpoenaed every license or assignment between Mock and any person since 1997. *Id.*, at *2. The United States District Court for the Northern District of California denied the Center's Motion to Compel directed toward these materials. Any connection to the underlying litigation was tenuous, at best, because: (1) Mock had already stated that aside from the assignment to plaintiff, he did not recall any licenses; and (2) to the extent the materials were relevant, it would be to damages and the documents sought were over a decade old. *Id.*, at *3, 5-6.

Unlike the materials sought in *Beinen*, the documents and things OMG seeks do exist. Moreover, the connection between the discovery sought and the underlying litigation is hardly as far removed as that in *Beinen*. Industry practice is relevant. The success or failures of others, and what they are using that contributes to that success or failure, is probative to whether OMG's formulation and know how provide it with a competitive advantage. Even if the materials are a

5   OMG'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND THINGS FROM KOMAG

CLI-1520132v1

decade old, and Komag has not made any such assertion, they would still be relevant since OMG's investment in its proprietary technology spans decades.

In short, the face of the Requests at issue demonstrate that they are narrowly tailored to OMG's trade secret claims. Komag admits that responsive materials exist, but now claims that to produce them would be burdensome and would run afoul of Komag's confidentiality obligations to other parties. These "objections" are a smoke screen and are easily remedied by the Protective Order and, if necessary, a check for copy costs. Had Komag made any request to OMG in this regard, it would have been accommodated. Komag did not. Indeed, Komag has engaged in tactics to avoid its obligations and has every interest in thwarting OMG's legitimate discovery efforts. This Court should not countenance Komag's continued efforts to do so.

### III. CONCLUSION

In short, Komag wants all of the protections afforded by the Federal Rules of Civil Procedure, but is not willing to comply with any of the attendant obligations of those same rules. For the foregoing reasons, OMG respectfully requests that the Court order Komag to provide full and complete responses to Subpoena Request Nos. 8, 11, and 12.

Dated: May 30, 2007

Respectfully submitted,

JONES DAY

By: /S/ Tharan Gregory Lanier
Tharan Gregory Lanier (SBN 138784)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: 650.739.3939
Facsimile: 650.739.3900
tglanier@jonesday.com

Attorney for Plaintiff
OMG FIDELITY, INC.